1   TERRENCE P. McMAHON (CA Bar No.71910)
    tmcmahon@mwe.com
2   DANIEL E. ALBERTI (CA Bar No. 68620)
    dalberti@mwe.com
3   DAVID T. ALEXANDER (CA Bar No. 49996)
    dtalexander@mwe.com
4   BIJAL V. VAKIL (CA Bar No. 192878)
    bvakil@mwe.com
5   **McDERMOTT WILL & EMERY LLP**
    3150 Porter Drive
6   Palo Alto, CA 94304-1212
    Telephone:    650.813.5000
7   Facsimile:    650.813.5100

8   RAYMOND A. JACOBSEN, JR. (*Pro Hac Vice*)
    rayjacobsen@mwe.com
9   **McDERMOTT WILL & EMERY LLP**
    600 13th Street, N.W.
10  Washington, DC 20005-3096
    Telephone:    202.756.8000
11  Facsimile:    202.756.8087

12  WILLIAM DIAZ (CA Bar No. 232297)
    wdiaz@mwe.com
13  **McDERMOTT WILL & EMERY LLP**
    18191 Von Karman Avenue, Suite 500
14  Irvine, CA 92612-7108
    Telephone:    949.851.0633
15  Facsimile:    949.851.9348

16  Attorneys for Defendants SILICON IMAGE, INC.,
    HDMI LICENSING, LLC and SIMPLAY LABS, LLC
17

18                    UNITED STATES DISTRICT COURT

19        NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

20  ANALOGIX SEMICONDUCTOR, INC.,          Case No. C08 02917 JF
    a Delaware corporation,
21                                          ELECTRONIC CASE FILING
                    Plaintiff,
22                                          **NOTICE OF MOTION AND MOTION TO**
            v.                              **DISMISS; MEMORANDUM OF POINTS**
23                                          **AND AUTHORITIES IN SUPPORT OF**
    SILICON IMAGE, INC., a Delaware         **DEFENDANTS' MOTION TO DISMISS**
24  corporation; HDMI LICENSING, LLC, a
    Delaware corporation; and SIMPLAY       Date:      October 24, 2008
25  LABS, LLC, a Delaware corporation,      Time:      2:00 p.m.
                                            Location:  Courtroom 3
26                  Defendants.             Before:    Judge Jeremy D. Fogel

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 2

I.   BACKGROUND AND INTRODUCTION.................................................. 2

II.  ARGUMENT ..................................................................................... 4

    A.   Legal Standard ........................................................................... 4

    B.   Analogix's Sherman Act Section 1 Claim Should Be Dismissed........................... 6

        1.   Silicon Image is Unable to Conspire With its Wholly-Owned Subsidiaries, HDMI Licensing and Simplay Labs ...................... 6

        2.   Analogix Fails to Allege Market Power in the HDMI Solution Product Market.............................................................. 7

    C.   Analogix's Sherman Act Section 2 Claim Should Be Dismissed........................... 9

        1.   Analogix Fails to Allege Harm Within the Alleged Relevant Product Market for its Sherman Act Section 2 Claim ................... 9

    D.   Both Analogix's Sherman Act Section 1 And Section 2 Claims Should Be Dismissed For Its Failure To Adequately Plead A Relevant Product Market ...... 10

        1.   Properly Defining the Relevant Product Market is Necessary to Sustain Both a Sherman Act Section 1 Rule of Reason Claim and a Sherman Act Section 2 Claim ......................................... 10

        2.   Defining the Relevant Product Market ....................................... 11

        3.   A Plaintiff Must Define the Relevant Product Market With Reference to Reasonable Interchangeability and Cross-Elasticity of Demand to Survive a Motion to Dismiss.................................... 13

        4.   Analogix Fails to Define its Relevant Product Markets With Reference to Reasonable Interchangeability or Cross-Elasticity of Demand .............................................................. 15

    E.   Analogix's Cartwright Act Claim Should Be Dismissed..................................... 18

    F.   Analogix's Section 17200 Claim Should Be Dismissed....................................... 20

III.  CONCLUSION............................................................................... 21

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*AD/SAT v. Associated Press,*
    181 F.3d 216 (2d Cir. 1999).................................................................... 13

*Adidas America, Inc. v. National Collegiate Athletic Association,*
    64 F. Supp. 2d 1097 (D. Kan. 1999) ...................................................... 15

*American Tobacco Co. v. United States,*
    328 U.S. 781 (1946)................................................................................. 7

*B.V. Optische Industrie De Oude Delft v. Hologic, Inc.,*
    909 F. Supp. 162 (S.D.N.Y. 1995) ........................................................ 14

*Balisteri v. Pacifica Police Dept.,*
    901 F.2d 696 (9th Cir. 1990).................................................................. 5

*Bell Atl. Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) ...................................................................... 5, 18

*Bhan v. NME Hospital, Inc.,*
    929 F.2d 1404 (9th Cir. 1991)............................................................... 9

*Big Bear Lodging Association v. Snow Summit, Inc.,*
    182 F.3d 1096 (9th Cir. 1999)............................ 9, 10, 11, 13, 14, 18

*Branch v. Tunnell,*
    14 F.3d 449 (9th Cir. 1994).................................................................... 6

*Brown Shoe Co. v. United States,*
    370 U.S. 294 (1962) ........................................................................ 11, 12

*Cascade Health Solutions v. PeaceHealth,*
    502 F.3d 895 (9th Cir. 2007).................................................................. 5

*Commercial Data Servers, Inc. v. IBM,*
    166 F. Supp. 2d 891 (S.D.N.Y. 2001) .............................................. 14, 18

*Commercial Data Servers, Inc. v. IBM,*
    262 F. Supp. 2d 50 (S.D.N.Y. 2003) ..................................................... 12

*Continental T.V., Inc. v. GTE Sylvania Inc.,*
    433 U.S. 36 (1977) ............................................................................... 10

*Conwood Co., L.P., v. U.S. Tobacco Co.,*
    290 F.3d 768 (6th Cir. 2002)................................................................. 11

*Copperweld Corp. v. Independence Tube Corp.,*
    467 U.S. 752 (1984) ................................................................ 1, 3, 6, 19

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

**TABLE OF AUTHORITIES**

**Page**

*Dimidowich v. Bell & Howell,*
   803 F.2d 1473 (9th Cir. 1986)..................................................................... 19, 20

*E-Z Dock, Inc. v. Shoremaster, Inc.,*
   2006 U.S. Dist. LEXIS 28305 (W.D. Mo. April 25, 2006) ........................ 14, 18

*Eastman Kodak Co. v. Image Technical Services,*
   504 U.S. 451 (1992)............................................................................................ 13

*In re eBay Seller Antitrust Litigation,*
   545 F. Supp. 2d 1027 (N.D. Cal. 2008) ............................................................ 14

*FTC v. Arch Coal, Inc.,*
   329 F. Supp. 2d 109 (D.D.C. 2004) .................................................................. 12

*Forsyth v. Humana, Inc.,*
   114 F.3d 1467 (9th Cir. 1997)............................................................................ 10

*Freeman v. San Diego Association of Realtors,*
   322 F.3d 1133 (9th Cir. 2002).............................................................................. 7

*E & G Gabriel v. Gabriel Brothers, Inc.,*
   1994 U.S. Dist. LEXIS 9455 (S.D.N.Y. July 13, 1994) ................................... 14

*Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.,*
   895 F.2d 1417 (9th Cir. 1990)............................................................................ 13

*JM Computer Services, Inc. v. Schlumberger Technologies, Inc.,*
   1997 U.S. Dist. LEXIS 21807 (N.D. Cal. May 20, 1997) ................................... 5

*Kaplan v. Burroughs Corp.,*
   611 F.2d 286 (9th Cir. 1979)........................................................................ 11, 12

*Lee v. City of Los Angeles,*
   250 F.3d 668 (9th Cir. 2001)................................................................................ 6

*Los Angeles Memorial Coliseum Commission v. N.F.L.,*
   726 F.2d 1381 (9th Cir. 1984)...................................................................... 11, 12

*McGlinchy v. Shell Chemical Co.,*
   845 F.2d 802 (9th Cir. 1988)................................................................................ 8

*Monsanto Co. v. Spray-Rite Serv. Corp.,*
   465 U.S. 752 (1984).............................................................................................. 7

*Moore v. Jas. H. Matthews & Co.,*
   550 F.2d 1207 (9th Cir. 1977)............................................................................ 13

*Mularkey v. Holsum Bakery, Inc.,*
   146 F.3d 1064 (9th Cir. 1998).............................................................................. 6

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF AUTHORITIES

**Page**

*NCAA v. Board of Regents,*
    468 U.S. 85 (1984) ............................................................................ 8

*National Society of Professional Engineers v. United States,*
    435 U.S. 679 (1978) .......................................................................... 7

*Newcal Industries v. Ikon Office Solution,*
    513 F.3d 1038 (9th Cir. 2008) .......................................................... 8

*Newport Components, Inc. v. NEC Home Electronics, Inc.,*
    671 F. Supp. 1525 (C.D. Cal. 1985) ................................................ 19

*Oltz v. St. Peter's Community Hospital,*
    861 F.2d 1440 (9th Cir. 1988) .......................................................... 14

*Ove v. Gwinn,*
    264 F.3d 817 (9th Cir. 2001) ............................................................ 4, 5

*Papasan v. Allain,*
    478 U.S. 265 (1986) .......................................................................... 5

*Parrino v. FHP, Inc.,*
    146 F.3d 699 (9th Cir. 1998) ............................................................ 6

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.,*
    124 F.3d 430 (3d Cir. 1997) ............................................................. 11, 14

*Re-Alco Industries, Inc. v. National Center for Health Education, Inc.,*
    812 F. Supp. 387 (S.D.N.Y. 1993) ................................................... 11

*Rebel Oil Co. v. Atlantic Richfield Co.,*
    51 F.3d 1421 (9th Cir. 1995) ............................................................ 8, 13

*Rick-Mik Enterprises v. Equilon Enterprises, LLC,*
    2008 U.S. App. LEXIS 14761 (9th Cir. July 11, 2008) ................... 8

*Rutman Wine Co. v. E. & J. Gallo Winery,*
    829 F.2d 729 (9th Cir. 1987) ............................................................ 9

*SmithKline Corp. v. Eli Lilly & Co.,*
    575 F.2d 1056 (3d Cir. 1978) ........................................................... 11

*Spectrum Sports, Inc. v. McQuillan,*
    506 U.S. 447 (1993) .......................................................................... 10

*State Oil Co. v. Khan,*
    522 U.S. 3 (1997) .............................................................................. 7

*In re Super Premium Ice Cream Distribution Antitrust Litigation,*
    691 F. Supp. 1262 (N.D. Cal. 1988) ................................................ 12, 16

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

# TABLE OF AUTHORITIES

Page

*Syufy Enterprises v. American Multicinema,*
   793 F.2d 990 (9th Cir. 1986)....................................................................... 13

*T.W. Electrical Service Inc. v. Pacific Electrical Contractors Assoc.,*
   809 F.2d 626 (9th Cir. 1987)........................................................................ 7

*Tanaka v. University of Southern California,*
   252 F.3d 1059 (9th Cir. 2001)............................................................... 11, 14

*Texaco Inc. v. Dagher,*
   547 U.S. 1 (2006)......................................................................................... 7

*Theatre Party Associates, Inc. v. Shubert Organization, Inc.,*
   695 F. Supp. 150 (S.D.N.Y. 1988)............................................................ 15

*Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.,*
   875 F.2d 1369 (9th Cir. 1989)..................................................................... 9

*Times-Picayune Publ'g Co. v. United States,*
   345 U.S. 594 (1953).................................................................................. 10

*Tominaga v. Shepherd,*
   682 F. Supp. 1489 (C.D. Cal. 1988)............................................................ 8

*Twin City Sportservice v. Charles O. Finley & Co*
   512 F.2d 1264 (9th Cir. 1975)................................................................... 13

*United States v. Columbia Steel Co.,*
   334 U.S. 495 (1948).................................................................................. 10

*United States v. E.I. duPont de Nemours & Co.,*
   351 U.S. 377 (1956).......................................................................... 12, 13, 16

*United States v. Gillette Co.,*
   828 F. Supp. 78 (D.D.C. 1993)........................................................... 13, 16

*United States v. Joseph Schlitz Brewing Co.,*
   253 F. Supp. 129 (N.D. Cal. 1966)........................................................... 13

*Yamaha International Corp. v. ABC International Traders,*
   1989 U.S. Dist. LEXIS 16585 (C.D. Cal. August 11, 1989) ..................... 19

## STATE CASES

*Alfred M. Lewis, Inc. v. Warehousemen,*
   163 Cal. App. 2d 771 (1958).................................................................... 19

*Cel-Tech Communications, Inc. v. L.A. Cellular Telegraph Co.,*
   20 Cal. 4th 163 (1999).............................................................................. 20

McDermott Will & Emery LLP
Attorneys At Law
Palo Alto

1

# TABLE OF AUTHORITIES

**Page**

2

3  *Chavez v. Whirlpool Corp.*,
        93 Cal. App. 4th 363 (2001)..................................................................... 20

4  *Chicago Title Insurance Co. v. Great Western Finance Corp.*,
        69 Cal. 2d 305 (1968) .............................................................................. 18

5

6  *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*,
        4 Cal. 3d 842 (1971) ................................................................................ 20

7

8  *G.H.I.I. v. MTS, Inc.*,
        147 Cal. App. 3d 256 (1983)..................................................................... 19

9  *Marin County Board Of Realtors, Inc. v. Palsson*,
        16 Cal. 3d 920 (1976) ............................................................................... 19

10

11  *Morrison v. Viacom, Inc.*,
        52 Cal. App. 4th 1514 (1997).................................................................... 18

12  *Morrison v. Viacom, Inc.*,
        66 Cal. App. 4th 534 (1998)...................................................................... 18

13

14  *Roth v. Rhodes*,
        25 Cal. App. 4th 530 (1994)...................................................................... 19

15  *Violante v. Communities* Southwest *Dev. & Const. Co.*,
        41 Cal. Rptr. 3d 673 (2006) ...................................................................... 20

16

## FEDERAL STATUTES

17

Sherman Act Section 1, 15 U.S.C. § 1 .......................................................... *passim*

18

Sherman Act Section 2, 15 U.S.C. § 2 .......................................................... *passim*

19

## STATE STATUTES

20

Cal. Bus. & Prof. Code § 16720 ............................................................... 1, 19

21

Cal. Bus. & Prof. Code § 17200 ........................................................... 1, 4, 20

22

## MISCELLANEOUS

23

24  Federal Rules of Civil Procedure Rule 11........................................................ 17

25  Federal Rules of Civil Procedure Rule 12(b)(6) ......................................... 1, 3, 5

26

27

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

## NOTICE OF MOTION AND MOTION TO DISMISS

TO PLAINTIFF AND TO ITS ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2008, at 2:00 p.m., or as soon thereafter as the matter may be heard, before the Honorable Jeremy D. Fogel, in Courtroom 3 of the above-entitled Court located at 280 S. First Street, San Jose, California, Defendants Silicon Image, Inc. ("Silicon Image"), HDMI Licensing, LLC ("HDMI Licensing") and Simplay Labs, LLC ("Simplay Labs"), will and hereby do move this Court pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for dismissal of the four claims against Defendants on the following grounds:

1. The first claim for relief for a "conspiracy" in violation of Section 1 of the Sherman Act among Silicon Image and its two wholly-owned subsidiaries HDMI Licensing and Simplay Labs fails to state a claim upon which relief can be granted under the United States Supreme Court holding in *Copperweld* that a parent company and its wholly-owned subsidiaries cannot conspire.

2. The first claim for relief for violation of Section 1 of the Sherman Act fails because the claim does not allege market power in the HDMI Solution product market.

3. The second claim for relief for violation of Section 2 of the Sherman Act fails because the complaint does not allege harm to competition in the alleged relevant market for Discrete HDMI Solutions.

4. Plaintiff's Sherman Act Section 1 and 2 claims should be dismissed because Plaintiff has failed to properly define the relevant product market.

5. Plaintiff's third claim for relief for violation of the California Cartwright Act (California Business and Professions Code Section 16720) fails for each of the reasons set forth above.

6. Plaintiff's fourth claim for relief under California's Unfair Competition Law (California Business and Professions Code Section 17200) is dependent upon the viability of the other claims in its complaint and, thus, fails for the reasons set forth above.

1    This motion is based upon this notice of motion and motion, the supporting memorandum

2    of points and authorities, the documents referenced in the complaint, all the pleadings on file in

3    this action and such argument as may be presented at the hearing in this matter.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    BACKGROUND AND INTRODUCTION.

6    Analogix Semiconductor, Inc.'s ("Analogix") complaint alleges that Silicon Image, Inc.

7    ("Silicon Image") and its wholly-owned subsidiaries HDMI Licensing, LLC ("HDMI Licensing")

8    and Simplay Labs, LLC ("Simplay Labs") have violated the federal and California state antitrust

9    laws by entering into a conspiracy to harm competition in violation of Section 1 of the Sherman

10   Act, Section 16720 of the Cartwright Act, and Section 17200 of California's Unfair Competition

11   Law.  In addition, the complaint alleges that Silicon Image is attempting to monopolize the

12   market for "Discrete HDMI solutions" in violation of Section 2 of the Sherman Act.

13   Analogix's complaint challenges the formation and ongoing activities of the High-

14   Definition Multimedia Interface ("HDMI") Consortium ("Consortium"), of which Silicon Image

15   is one of several Founders.[1]  The Consortium combines the efforts of innovative semiconductor

16   and consumer electronic companies to develop technology that provides a high-definition digital

17   audio and video interface between audio/video sources like digital televisions and DVD players,

18   to the benefit of millions of consumers.  By contributing expertise and intellectual property and

19   licensing such intellectual property, the Consortium has fostered competition by various

20   companies (including Analogix) that otherwise would not have existed.  As a result of these

21   efforts, the HDMI industry has grown from nothing into an intensely competitive industry

22   consisting of "more than 800 separate companies." Analogix Complaint ("Compl.") ¶ 19.

23   This is not a case of secret meetings and phone calls among co-conspirators for the

24   purpose of fixing prices or allocating markets.  Ironically, Analogix's theory of liability is based

25   upon an alleged conspiracy among Defendants and the other Founders of the Consortium, the vast

26   majority of which are Defendants' customers--large manufacturers of consumer electronic

27

28   [1] Only Silicon Image and its two wholly-owned subsidiaries, HDMI Licensing and Simplay are named as Defendants.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  products that incorporate HDMI technology (*e.g.*, high-definition televisions, DVD players)--who

2  would be the very victims of the alleged conspiracy.

3      There are a number of pleading deficiencies in Analogix's complaint which warrant

4  dismissal of the entire complaint under Rule 12(b)(6). Many of these deficiencies cannot be

5  cured by amending the complaint and, as such, Silicon Image respectfully requests that the Court

6  dismiss Analogix's complaint with prejudice.

7      Specifically, Silicon Image moves to dismiss Analogix's complaint on the following

8  grounds (*see also* Figure 1 below):

9      1.    Analogix alleges a conspiracy among the Defendants, Silicon Image and its

10  wholly-owned subsidiaries HDMI Licensing and Simplay Labs. Under the Supreme Court's

11  *Copperweld* decision, a parent entity cannot conspire with its wholly-owned subsidiaries.

12  Therefore, Analogix's Sherman Act Section 1 claim should be dismissed.

13      2.    Analogix fails to allege market power in the HDMI Solution product market.

14  "Rule of reason" cases require allegations of market power in the relevant market. Analogix's

15  Sherman Act Section 1 claim falls under the rule of reason. Therefore, Analogix's Sherman Act

16  Section 1 claim should be dismissed.

17      3.    Analogix fails to allege harm to competition in the so-called "Discrete HDMI

18  Solution" product market. Rule of reason cases balance the procompetitive effects of alleged

19  conduct against its anticompetitive effects. As such, Sherman Act Section 2 claims require

20  allegations of harm to competition in the relevant market. Therefore, Analogix's Sherman Act

21  Section 2 claim should be dismissed.

22      4.    Analogix's relevant product market allegations are deficient. Rule of reason cases

23  require plaintiffs to define the relevant product market in order to determine the area in which

24  competition allegedly has been harmed. To properly define the relevant product market, a

25  plaintiff must do so with respect to reasonable interchangeability or cross-elasticity of demand

26  between two or more products. Analogix has failed to make such allegations. Therefore,

27  Analogix's Sherman Act Sections 1 and 2 claims should be dismissed.

28

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

5.      California courts look to federal antitrust cases for interpreting the Cartwright Act. Analogix's pleading deficiencies with respect to its Sherman Act claims are grounds for dismissal on its Cartwright Act claims.  Therefore, Analogix's Cartwright Act Section 16720 claim should be dismissed.

6.      California's Unfair Competition Law Section 17200 prohibits "any unlawful, unfair, or fraudulent business practice." Cal. Bus. & Prof. Code § 17200.  Analogix's Section 17200 claim relies on the successful outcome of its Sherman Act and Cartwright Act claims.  Analogix's pleading deficiencies with respect to its Sherman Act and Cartwright Act claims are grounds for dismissal on its Section 17200 claim.  Therefore, Analogix's California Unfair Competition Law Section 17200 claim should be dismissed.

**Figure 1:  Analogix's Pleading Deficiencies and Affected Claims**

| Pleading Deficiency | Affected Claims | | | |
|---|---|---|---|---|
| | Sherman Act §1 | Sherman Act §2 | Cartwright Act §16720 | Unfair Competition Law §17200 |
| Alleged conspiracy between Silicon Image and its wholly-owned subsidiaries | **YES** | No | **YES** | **YES** |
| No market power alleged in HDMI Solutions market | **YES** | No | **YES** | **YES** |
| No harm to competition alleged in Discrete HDMI Solutions market | No | **YES** | No | **YES** |
| No allegations related to reasonable interchangeability or cross-elasticity of demand in defining relevant markets | **YES** | **YES** | **YES** | **YES** |

## II:      ARGUMENT.

### A.      Legal Standard.

To avoid dismissal, Analogix must present claims that are based on alleged facts, not "conclusory allegations of law [or] unwarranted inferences." *Ove v. Gwinn*, 264 F.3d 817, 821

1  (9th Cir. 2001). "Dismissal can be based on either the lack of a cognizable legal theory or the

2  absence of sufficient facts alleged under a cognizable legal theory." *JM Computer Services, Inc.*

3  *v. Schlumberger Techs., Inc.,* 1997 U.S. Dist. LEXIS 21807, at *4 (N.D. Cal. May 20, 1997)

4  (Ware, J.) (citing *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). As the

5  Supreme Court recently confirmed in *Twombly*, "a plaintiff's obligation to provide the 'grounds'

6  of his 'entitle[ment] to relief' requires more than labels and conclusions." *Bell Atl. Corp. v.*

7  *Twombly*, 127 S. Ct. 1955, 1964-65 (2007); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986)

8  (conclusory allegations couched in factual allegations are not sufficient to state a cause of action).

9      Though a court considering a Rule 12(b)(6) motion may accept a plaintiff's allegations as

10  true, a court may disregard unreasonable inferences or conclusory legal allegations cast in the

11  form of factual allegations. *See Twombly*, 127 S.Ct. at 1964-65 ("While a complaint attacked by

12  a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations ... a plaintiff's

13  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

14  conclusions, and a formulaic recitation of the elements of a cause of action will not do ... Factual

15  allegations must be enough to raise a right to relief above the speculative level ... on the

16  assumption that all the allegations in the complaint are true (even if doubtful in fact).").  This is

17  particularly true in the context of antitrust claims where "[t]he costs of modern federal antitrust

18  litigation and the increasing caseload of the federal courts counsel against sending the parties into

19  discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the

20  events related in the complaint." *Id.* at 1967; *see also Cascade Health Solutions v. PeaceHealth*,

21  502 F.3d 895, 916 (9th Cir. 2007) (noting the potential burden of antitrust trials and "declin[ing]

22  to adopt a rule that might encourage more antitrust litigation than is reasonably necessary to ferret

23  out anticompetitive practices").  Analogix's claims fail to satisfy both the necessary legal and

24  factual requirements to proceed with its complaint.

25      Further, the Court's review need not be limited to the four corners of Analogix's

26  complaint.  Analogix's allegations rely extensively on certain publicly-available documents that

27  Analogix has incorporated by reference into its complaint.  Under such circumstances, the Court

28  may consider these documents. *See* 2007 In-Stat Report attached as Exhibit A to the Declaration

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  of William Diaz ("Exhibit A"). "[A] court may consider 'material which is properly submitted as

2  part of the complaint' on a motion to dismiss without converting the motion to dismiss into a

3  motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)

4  (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994). Further, "[i]f the documents are

5  not physically attached to the complaint, they may be considered if the documents' 'authenticity

6  … is not contested' and 'the plaintiff's complaint necessarily relies' on them." *Lee*, 250 F.3d at

7  688 (quoting *Parrino v. FHP, Inc.*, 146 F.3d 699, 705-06 (9th Cir. 1998)).

8  **B.   Analogix's Sherman Act Section 1 Claim Should Be Dismissed.**

9  **1.   Silicon Image is Unable to Conspire With its Wholly-Owned**

10  **Subsidiaries, HDMI Licensing and Simplay Labs.**

11  Analogix's allegations are insufficient as a matter of law to sustain its Sherman Act

12  Section 1 claim. It is a well-established antitrust principle that a company cannot conspire with

13  its wholly-owned subsidiaries. In *Copperweld Corp. v. Independence Tube Corp.*, the Supreme

14  Court held that "Section 1 of the Sherman Act … reaches unreasonable restraints of trade effected

15  by a 'contract, combination . . . or conspiracy' between separate entities. It does not reach

16  conduct that is 'wholly unilateral.'" 467 U.S. 752, 767-68 (1984) (holding that a company, its

17  officers, and its wholly-owned subsidiaries are considered a single entity for Sherman Action

18  Section 1 purposes and thus are incapable of conspiring with one another); *see also Mularkey v.*

19  *Holsum Bakery, Inc.*, 146 F.3d 1064, 1065 (9th Cir. 1998) (noting that "unilateral conduct . . . is

20  not prohibited by § 1").

21  Analogix concedes that HDMI Licensing and Simplay Labs are Silicon Image's wholly-

22  owned subsidiaries. (Compl. ¶¶ 14b, 64). Nevertheless, the complaint alleges that "Silicon

23  Image, HDMI Licensing, and Simplay Labs have collaborated with each other…with the purpose

24  and effect of…conspiring…in violation of the antitrust laws…" (Compl. ¶ 76).[2] Such a

25  "conspiracy," however, is not an actionable conspiracy in violation of Sherman Act Section 1.

26  Following *Copperweld*, the Ninth Circuit has held that a company cannot conspire with its

27
28  [2] The fact that Analogix alleges that there are other entities who were part of the alleged conspiracy (Compl. ¶ 76) does not diminish the fact that, under the antitrust laws, the alleged conspiracy cannot include both Silicon Image and its wholly-owned subsidiaries.

wholly-owned subsidiaries. *See Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1147 (9th Cir. 2002) ("A company cannot conspire with itself. ... [This rule] applies to a company and its officers, employees and wholly owned subsidiaries.").

To demonstrate "concerted action," an antitrust plaintiff must establish that there was a conscious commitment by two or more independent economic actors to a common scheme designed to achieve an unlawful objective. *See T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 634-35 (9th Cir. 1987) (holding that unilateral action by one entity, without showing of complicity or participation by other entities, fell outside the purview of Section 1 of the Sherman Act); *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984) (quotations omitted). *See also American Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (noting that there must be evidence of "a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement"). Accordingly, Analogix's Sherman Act Section 1 claim should be dismissed for failure to state an actionable conspiracy among the Defendants. Moreover, Analogix's complaint as applied to HDMI Licensing and Simplay Labs should be dismissed on this basis alone because their involvement in this case is based solely upon Analogix's legally invalid claim that Silicon Image conspired with its wholly-owned subsidiaries. For the reasons set forth below, Analogix's remaining claims against HDMI Licensing and Simplay Labs (the Cartwright Act and Section 17200 claims) can only go forward against these two defendants if Analogix succeeds on its Sherman Act Section 1 claim.

### 2. Analogix Fails to Allege Market Power in the HDMI Solution Product Market.

Where the anticompetitive impact of a defendant's alleged conduct "is not immediately obvious," such conduct is appropriately analyzed under the rule of reason. *Texaco Inc. v. Dagher*, 547 U.S. 1, 5-6 (2006). Indeed, the rule of reason is presumptively applied in antitrust cases, (*see, e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3 (1997)), and the *per se* rule is reserved only for those agreements that are "so plainly anticompetitive that no elaborate study of the industry is needed to establish their illegality." *National Soc. of Professional Engineers* v. *United States*, 435 U.S. 679, 692 (1978). This is not such a case of allegations giving rise to *per se* liability.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   The nature and substance of Analogix's Sherman Act Section 1 claim amply demonstrate

2   that it falls within the purview of the rule of reason. Analogix's Sherman Act Section 1 claim is

3   vertical in nature (*see* Compl. ¶ 52) and does not include allegations that are reserved for *per se*

4   treatment (*e.g.*, price-fixing, market allocations, group boycotts). *See McGlinchy v. Shell*

5   *Chemical Co.*, 845 F.2d 802, 811 (9th Cir. 1988).

6       Applying the rule of reason, to allege a violation of Section 1 of the Sherman Act, a

7   plaintiff must allege that the restraint is likely to have a substantial, adverse effect on competition.

8   *See Tominaga v. Shepherd*, 682 F. Supp. 1489, 1496 (C.D. Cal. 1988) ("To establish a Section 1

9   violation under the rule of reason, plaintiff must show an agreement which is intended to harm or

10  unreasonably restrain competition and actually does so."). Proof of Silicon Image's market

11  power is a prerequisite for such analysis. *See Rebel Oil Co. v. Atlantic Richfield Co.,* 51 F.3d

12  1421, 1444 (9th Cir. 1995) ("To show antitrust injury under Sherman Act § 1, a plaintiff must

13  show that the [defendant] has market power.").

14      Therefore, a plaintiff must allege *market power* in a rule of reason claim, that is, the

15  "ability to raise prices above those that would be charged in a competitive market." *NCAA v. Bd.*

16  *of Regents*, 468 U.S. 85, 109 n.38 (1984). "[F]ailure to allege power in the relevant market is a

17  sufficient ground to dismiss an antitrust complaint." *Rick-Mik Enters. v. Equilon Enters., LLC*,

18  2008 U.S. App. LEXIS 14761, at *18 (9th Cir. July 11, 2008); *see also Newcal Industries, Inc. v.*

19  *Ikon Office Solution*, 513 F.3d 1038, 1044 (9th Cir. 2008) ("In order to state a valid claim under

20  the Sherman Act, a plaintiff must allege market power within a relevant market and defendant

21  must have power within that market."). In fact, "[t]he 'relevant market' and 'market power'

22  requirements apply identically under the two different sections of the [Sherman] Act." *Newcal,*

23  513 F.3d at 1044 n.3.

24      Here, Analogix has entirely failed to aver market power. Analogix's allegation that

25  Silicon Image possesses a "significant percentage of the HDMI Solution Product Market"

26  (Compl. ¶ 73) is ambiguous at best and certainly insufficient to meet the standard for pleading a

27  Sherman Act Section 1 violation. Absent more information as to Defendants' market share or

28  market power in the HDMI Solution Product Market, Analogix's allegations are insufficient as a

1   matter of law. *See Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729 (9th Cir. 1987)

2   (affirming dismissal of complaint where plaintiff failed to specify defendant's market share

3   within the alleged geographic market); *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.*, 875

4   F.2d 1369, 1378 (9th Cir. 1989) ("Market analysis is essential because intent to exclude

5   competition or control prices cannot exist in vacuum"). Having failed to meet this minimal and

6   necessary standard, Analogix's Section 1 claim should be dismissed.

7        C.    **Analogix's Sherman Act Section 2 Claim Should Be Dismissed.**

8             1.    **Analogix Fails to Allege Harm Within the Alleged Relevant Product**

9                   **Market for its Sherman Act Section 2 Claim.**

10       Analogix contends that Silicon Image's conduct has resulted in a monopoly within the

11  market for Discrete HDMI Solutions. (Compl. ¶ 82.) Analogix, however, fails to allege that this

12  market has been harmed or has suffered any anticompetitive effects. Rather, Analogix alleges

13  that, as a result of Silicon Image's attempt to monopolize the "Discrete HDMI Solutions Market,"

14  competition has been reduced within the markets for *HDMI solutions* and *HDMI-enabled*

15  *products*. (Compl. ¶ 84.) No harm to competition is alleged in the market for Discrete HDMI

16  Solutions.

17       Among the required elements of a Sherman Act Section 2 violation is proof that a

18  defendant has restrained competition, raised prices, or restricted output within the market in

19  which defendant allegedly possesses monopoly power. *See Thurman Industries*, 875 F.2d at 1369

20  (stating that Section 2 requires a showing of harm to competition within the alleged relevant

21  market); *Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1413-14 (9th Cir. 1991) (holding that, to

22  establish a Section 2 violation, a plaintiff "must delineate a relevant market and show that the

23  defendant plays enough of a role in that market to impair competition significantly"); *Big Bear*

24  *Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999) ("Proving injury to

25  competition in a rule of reason case almost uniformly requires a claimant to prove the relevant

26  market and to show the effects upon competition within that market."). Analogix has failed to

27  plead any such competitive harm in the Discrete HDMI Solutions Market it alleges, such as

28  increased prices, reduction in output, or competition in this market otherwise being restrained.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    Having failed to satisfy this necessary element, Analogix's Sherman Act Section 2 claim should

2    be dismissed.

3    **D.    Both Analogix's Sherman Act Section 1 And Section 2 Claims Should Be**

4    **Dismissed For Its Failure To Adequately Plead A Relevant Product Market.**

5    Analogix focuses on two alleged relevant product markets.  The first is "[t]he Discrete

6    HDMI Solution Product Market[, which] is the market for discrete HDMI Solutions that interface

7    digital video and audio data transmissions from a digital transmitter to a digital receiver."

8    (Compl.¶ 72(a))  The second is "[t]he HDMI Solution Product Market[, which] includes both the

9    Discrete HDMI Solution Product Market and integrated HDMI solutions…"  (Compl. ¶ 72(b))

10    Analogix refers to alleged relevant product markets using only conclusory statements, devoid of

11    the elements that must be pled to state a valid antitrust claim.

12    **1.    Properly Defining the Relevant Product Market is Necessary to**

13    **Sustain Both a Sherman Act Section 1 Rule of Reason Claim and a**

14    **Sherman Act Section 2 Claim.**

15    Analogix's first claim is for a violation of Section 1 of the Sherman Act.  (Comp. ¶¶ 75-

16    79).  As discussed above, Analogix's claim is subject to the rule of reason standard.  In a rule of

17    reason case, a plaintiff must prove harm to competition in the relevant market.  *See Continental*

18    *T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 45, 53 n.21 (1977); *Big Bear Lodging*, 182 F.3d at

19    1101.  Accordingly, a plaintiff in a rule of reason case first must properly define the relevant

20    market.  *Id.*; *see also Times-Picayune Publ'g Co. v. United States*, 345 U.S. 594, 611-13 (1953);

21    *United States v. Columbia Steel Co.*, 334 U.S. 495, 527 (1948).

22    Analogix's second claim alleges a violation of Section 2 of the Sherman Act under a

23    theory of attempted monopolization.  (Compl. ¶¶ 80-85)  In an attempted monopolization claim,

24    "the plaintiff charging attempted monopolization must prove a dangerous probability of actual

25    monopolization, which has generally required the definition of the relevant market…" *Spectrum*

26    *Sports, Inc. v. McQuillan*, 506 U.S. 447, 455 (1993); *see also Forsyth v. Humana, Inc.*, 114 F.3d

27

28

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

1  1467, 1477 (9th Cir. 1997) (Ninth Circuit held that in a claim for attempted monopolization, a

2  plaintiff must define the relevant market).[3]

3      A Sherman Act Section 1 rule of reason claim and/or a Section 2 claim should be

4  dismissed whenever a plaintiff fails to sufficiently and properly allege a relevant market. This

5  can occur even at the motion to dismiss stage. *See Tanaka v. Univ. of So. Cal.*, 252 F.3d 1059,

6  1063 (9th Cir. 2001) ("Failure to identify a relevant market is a proper ground for dismissing a

7  Sherman Act claim.") (citing *Big Bear Lodging,* 182 F.3d at 1105); *Queen City Pizza, Inc. v.*

8  *Domino's Pizza, Inc.*, 124 F.3d 430, 441-42 (3d Cir. 1997) (dismissing monopolization and

9  attempted monopolization claims based on an alleged market that failed as a matter of law); *Re-*

10  *Alco Indus., Inc. v. National Center for Health Educ., Inc.*, 812 F. Supp. 387, 391 (S.D.N.Y.

11  1993) (dismissing claims under Section 1 and 2 of the Sherman Act because plaintiff's "narrowly

12  tailored market definition is inadequate under antitrust law").

13        **2.    Defining the Relevant Product Market.**

14      With regard to the sufficiency of allegations defining the relevant market, the Ninth

15  Circuit has held that:

16          Product market definition involves the 'process of describing those groups
of producers which, because of the similarity of their products, have the

17          ability -- actual or potential -- to take significant amounts of business away
from each other. A market definition must look at all relevant sources of

18          supply, either actual rivals or eager potential entrants to the market.

19  *Los Angeles Mem'l Coliseum Comm'n v. N.F.L.*, 726 F.2d 1381, 1392-93 (9th Cir. 1984) (quoting

20  *Kaplan v. Burroughs Corp.*, 611 F.2d 286, 292 (9th Cir. 1979), *cert. denied*, 447 U.S. 924 (1980)

21  and *SmithKline Corp. v. Eli Lilly & Co.*, 575 F.2d 1056, 1063 (3d Cir. 1978), *cert. denied*, 439

22  U.S. 838 (1978)).

23      The Supreme Court has stated that "[t]he outer boundaries of a product market are

24  determined by the reasonable interchangeability of use or cross-elasticity of demand between the

25  product itself and substitutes for it." *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962);

---

26  [3]  While Analogix only alleges an attempted monopolization claims, it is clear that market
definition is essential for any Section 2 claim. *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182

27  F.3d 1096, 1105 (9th Cir. 1999). Indeed, "[t]he first step in any action brought under § 2 of the
Sherman Act is for the plaintiff to define the relevant product and geographic markets…"

28  *Conwood Co., L.P., v. U.S. Tobacco Co.*, 290 F.3d 768, 782 (6th Cir. 2002).

McDermott Will & Emery LLP
ATTORNEYS AT LAW
PALO ALTO

1    *see also United States v. E.I. duPont de Nemours & Co.*, 351 U.S. 377, 394-95 (1956); *Los*

2    *Angeles Mem'l*, 726 F.2d at 1393 (Ninth Circuit applies the same test); *see also Kaplan,* 611 F.2d

3    at 291.

4          It is well-established antitrust doctrine that products are in the same relevant market if

5    they are reasonably interchangeable in use. *See Brown Shoe*, 370 U.S. at 325; *du Pont,* 351 U.S.

6    at 395.  The fact that two products may appear different from one another is irrelevant if they are

7    reasonably interchangeable. *See du Pont,* 351 U.S. at 394 ("where there are market alternatives

8    that buyers may readily use for their purposes, illegal monopoly does not exist merely because the

9    product said to be monopolized differs from others"); *Commercial Data Servers, Inc. v. IBM*, 262

10   F. Supp. 2d 50, 72 (S.D.N.Y. 2003) ("interchangeability in antitrust analysis does not refer only

11   to products [that] can be seamlessly swapped for each other….only 'reasonable

12   interchangeability' is required").

13         In *United States v. E.I. du Pont de Nemours & Co.*, the Supreme Court considered

14   whether the relevant product market consisted of cellophane or all flexible packaging material.

15   The products had significant differences in burst strength, gas permeability, grease resistance, and

16   other features.  The Court held that "despite cellophane's advantages, it has to meet competition

17   from other materials in every one of its uses." 351 U.S. at 399.  The Court also found that "a very

18   considerable degree of functional interchangeability exists between these products…." *Id.*  As

19   such, the Court concluded that cellophane and other flexible packaging material were reasonably

20   interchangeable in use and, thus, found these products to be in the same relevant product market.

21   *Id.* at 404.

22         "Reasonably interchangeability," however, does not mean that all customers will find two

23   products to be functionally equivalent.  Rather, "the court must consider the degree to which

24   buyers treat the products as interchangeable, but need not find that all buyers will substitute one

25   commodity for another." *FTC v. Arch Coal, Inc.*, 329 F. Supp. 2d 109, 122 (D.D.C. 2004).

26         Further, differences in product attributes, pricing, or quality is not determinative; the key

27   inquiry is whether the products are reasonably interchangeable. *See In re Super Premium Ice*

28   *Cream Distribution Antitrust Litigation*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988) (Legge, J.),

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    *aff'd sub nom. Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 895 F.2d 1417

2    (9th Cir. 1990) (court held that premium ice cream competes with lower grade ice cream despite

3    the fact that premium ice cream has "higher butterfat content, lower air volume, and more natural

4    ingredients."); *United States v. Gillette Co.*, 828 F. Supp. 78, 82-84 (D.D.C. 1993) (court held that

5    the relevant product market for "premium writing instruments" included fountain pens,

6    mechanical pencils, refillable ballpoint pens, and roller pens, despite the obvious differences in

7    the products and the fact that prices among these products ranged from $40 to $400); *United*

8    *States v. Joseph Schlitz Brewing Co.*, 253 F. Supp. 129, 133 (N.D. Cal. 1966) (Weigel, J.), *aff'd*,

9    385 U.S. 37 (1966); *AD/SAT v. Associated Press*, 181 F.3d 216, 228 (2d Cir. 1999).

10      Cross-elasticity of demand between two products refers to "the extent to which consumers

11    will change their consumption of one product in response to a price change in another...."

12    *Eastman Kodak Co. v. Image Technical Servs.*, 504 U.S. 451, 469 (1992).  The higher the cross-

13    elasticity of demand between two products, the more likely they are in the same relevant product

14    market.  Historically, courts have used cross-elasticity of demand as an important metric for

15    determining the relevant product market.  *See du Pont*, 351 U.S. at 400; *Rebel Oil*, 51 F.3d at

16    1435; *Syufy Enters. v. American Multicinema, Inc.*, 793 F.2d 990, 994 (9th Cir. 1986); *Moore v.*

17    *Jas. H. Matthews & Co.*, 550 F.2d 1207, 1218-19 (9th Cir. 1977).[4]

18      **3. A Plaintiff Must Define the Relevant Product Market With Reference**

19       **to Reasonable Interchangeability and Cross-Elasticity of Demand to**

20       **Survive a Motion to Dismiss.**

21      In *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, the Ninth Circuit affirmed the lower

22    court's ruling that plaintiffs' market definition allegations were insufficient because plaintiffs

23    ———————————
[4]  Though most courts focus on cross-elasticity of *demand*, the Ninth Circuit has been a staunch
24    supporter of the need to assess cross-elasticity of *supply* as well.  Cross-elasticity of supply refers
to a scenario where producers of Product A are willing and able to switch production to Product B
25    in response to a price increase in Product B.  In *Twin City Sportservice v. Charles O. Finley &*
*Co.*, the Ninth Circuit held that "[a] like analysis applies when the market is viewed from the
26    production rather than the consumption standpoint....Where the degree of substitutability in
production is high, cross-elasticities of supply will also be high, and again the two commodities in
27    question should be treated as part of the same market."  512 F.2d 1264, 1271 (9th Cir. 1975).
Likewise, in *Rebel Oil*, the Ninth Circuit relied on cross-elasticity of supply in determining that
28    full-serve gasoline competed against self-serve gasoline because suppliers could readily convert
their full-serve pumps into self-serve pumps.  *Rebel Oil* at 1436.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   failed to "allege that Big Bear Valley is the area of effective competition in which buyers of these

2   products can find alternative sources of supply, or that there are no other goods or services that

3   are reasonably interchangeable with lodging accommodations or ski packages within this

4   geographic market." 182 F.3d at 1105 (citing *Oltz v. St. Peter's Community Hosp.*, 861 F.2d

5   1440, 1446 (9th Cir. 1988)).

6       The Northern District (in addition to many other courts) has held that:

7           'Where the plaintiff fails to define its proposed relevant market with
            reference to the rule of reasonable interchangeability and cross-elasticity of
8           demand, or alleges a proposed relevant market that clearly does not
            encompass all interchangeable substitute products even when all factual
9           inferences are granted in plaintiff's favor, the relevant market is legally
            insufficient and a motion to dismiss may be granted.'
10

11  *In re eBay Seller Antitrust Litigation*, 545 F. Supp.2d 1027, 1031 (N.D. Cal. 2008) (Fogel, J.)

12  (quoting *Queen City Pizza*, 124 F.3d at 436); *see also B.V. Optische Industrie De Oude Delft v.*

13  *Hologic, Inc.*, 909 F. Supp. 162, 171-72 (S.D.N.Y. 1995) ("Because a relevant market includes

14  all products which are reasonably interchangeable ... '[p]laintiff's failure to define its market by

15  reference to the rule of reasonable interchangeability is, *standing alone*, valid grounds for

16  dismissal.") (quoting *E & G Gabriel v. Gabriel Bros., Inc.*, 1994 U.S. Dist. LEXIS 9455, at *10

17  (S.D.N.Y. July 13, 1994)) (emphasis added); *Tanaka,* 252 F.3d at 1063 (Court held that a motion

18  to dismiss is appropriate where plaintiff fails to properly define the relevant market).

19      Furthermore, "even on a motion to dismiss, an antitrust claim will be dismissed '[i]f a

20  complaint fails to allege facts regarding substitute products, to distinguish among apparently

21  comparable products, or to allege other pertinent facts relating to cross-elasticity of demand.'"

22  *E-Z Dock, Inc. v. Shoremaster, Inc.*, 2006 U.S. Dist. LEXIS 28305, at *7 (W.D. Mo. April 25,

23  2006) (quoting *Commercial Data Servers, Inc. v. IBM*, 166 F. Supp.2d 891, 896 (S.D.N.Y. 2001).

24      Without allegations regarding the reasonable interchangeability or cross-elasticity of

25  demand between products potentially in the relevant market, an antitrust plaintiff cannot define a

26  narrow product market and expect to survive a motion to dismiss. It is legally insufficient to

27  merely identify an alleged relevant market and argue that the basis for it will be explained in

28  discovery. The caselaw is clear that "[a]n antitrust plaintiff may not [simply] 'define a market so

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

NTC OF MOTION & MOTION; MPAs IN
SUPPORT OF DEFENDANTS' MOTION                    - 14 -                    (No. C08 02917 JF)
TO DISMISS

1   as to cover only the practice complained of.'" *Adidas Am., Inc. v. NCAA*, 64 F. Supp. 2d 1097,

2   1102 (D. Kan. 1999); *see also Theatre Party Assocs., Inc. v. Shubert Org., Inc.*, 695 F. Supp. 150,

3   154 (S.D.N.Y. 1988) (court dismissed complaint because plaintiff "narrowly defined the market

4   in an attempt to conform the alleged market to the facts of the present case").

5         **4.    Analogix Fails to Define its Relevant Product Markets With Reference**

6             **to Reasonable Interchangeability or Cross-Elasticity of Demand.**

7      The face of the complaint plainly shows that Analogix has not made even a minimal

8   attempt to define the relevant product markets with regards to the well-settled antitrust principles

9   of reasonable interchangeability and cross-elasticity of demand.  These terms or concepts are not

10   even mentioned in the complaint.  In addition, Analogix's allegations do not relate substantively

11   to the concepts embedded in reasonable interchangeability and cross-elasticity of demand.  While

12   repeatedly citing to, and relying heavily on, reports by market research company In-Stat,

13   Analogix does not discuss why competing technologies identified in these reports, such as Digital

14   Visual Interface ("DVI") or DisplayPort, are excluded from the relevant product market.

15      In the complaint, Analogix also does not undertake to compare the uses of HDMI

16   Solutions or Discrete HDMI Solutions to other technologies to determine if they are reasonably

17   interchangeable.  In fact, the complaint barely references other technologies.  The only mention of

18   another technology is the lone reference to DVI being one of the two technologies required by the

19   Federal Communications Commission ("FCC") for "all high-definition set-top boxes" but being

20   "a less-popular standard." (Compl. ¶ 25(f)) (citing 2007 In-Stat Report).  But significantly,

21   Analogix's complaint is silent as to why DVI is not reasonably interchangeable with HDMI

22   technology.  One would think that the fact that the FCC requires *either* HDMI or DVI to be on

23   high-definition set-top boxes would prompt Analogix to provide some modicum of factual

24   allegations regarding why HDMI and DVI are not reasonably interchangeable.

25      Further, the allegation that DVI is "less popular" is hopelessly vague and not dispositive

26   of whether it should be included in the relevant product market.  (Compl. ¶ 25(f))  If DVI is

27   reasonably interchangeable with HDMI, even if the latter were more popular, the antitrust laws

28   would require that both technologies be included in the relevant product market.  While Analogix

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1  quotes the 2007 In-Stat report to say that DVI is "a dying specification," Analogix does not allege

2  whether DVI is, or has been, reasonably interchangeable with HDMI and may restrain pricing of

3  HDMI products.

4       Analogix's complaint alleges that the Founders of the Consortium "have entered into an

5  agreement to control the market for HDMI solutions." (Compl. ¶ 26)  The discussions for this

6  "agreement" Analogix refers to allegedly began in 2001. (Compl. ¶ 11)  Accordingly, addressing

7  the technologies that have competed against HDMI since 2001 is highly relevant.  The 2007 In-

8  Stat report that Analogix relies upon only goes as far back as 2005.  Still, In-Stat compares the

9  shipments of devices with HDMI versus DVI technology.  In 2005, the number of devices

10  shipped with HDMI was roughly 18 million units.  That same year, more than four times that

11  number of units (90 million devices) were shipped with DVI.  *See* Exhibit A at p. 2.  In 2006,

12  there were also significantly more devices shipped with DVI than HDMI.  *See id.*  It was only

13  until last year that the number of units shipped with HDMI outpaced DVI.

14       Equally important is the fact that the complaint includes no allegations regarding the

15  reasonable interchangeability between Discrete HDMI Solutions and integrated HDMI solutions.

16  Analogix merely alleges that integrated HDMI solutions have additional functionality and, as

17  such, command higher prices.  (Compl. ¶ 20(a))  As the cases discussed above make clear, this is

18  not a sufficient basis to exclude a product or technology.  Products can be in the same relevant

19  market despite different attributes and prices.  *See e.g., du Pont,* 351 U.S. at 399, 404; *Super*

20  *Premium Ice Cream,* 691 F. Supp. at 1268; *Gillette,* 828 F. Supp. at 82-84.  That is why it is

21  imperative that an antitrust plaintiff define the relevant product market with respect to the

22  reasonable interchangeability between the products, which Analogix has failed to do and its

23  complaint should be dismissed.

24       In addition to Analogix's utter failure to provide sufficient facts, let alone *even allege*, that

25  HDMI Solutions and Discrete HDMI Solutions are not reasonably interchangeable with other

26  technologies, Analogix makes no effort to provide allegations related the cross-elasticity of

27  demand between HDMI and other technologies or between Discrete HDMI Solutions and

28  integrated HDMI solutions.  First, the complaint does not even make reference to the concept of

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

1    cross-elasticity.  Beyond that, the complaint does not even mention the effect that a price increase

2    in HDMI has on the quantity demanded of other technologies.[5]

3        Further, while the reasonable interchangeability and cross-elasticity of demand between

4    two products are the key elements required to define the relevant market, Analogix does not even

5    put forth the effort made by the plaintiffs, albeit unsuccessfully, in the cases discussed above

6    dealing with market definition allegations beyond reasonable interchangeability and cross-

7    elasticity of demand.  For instance, Analogix does not discuss the different product attributes

8    between HDMI and other technologies.  The complaint makes no mention of differences in the

9    prices of HDMI versus other technologies.  There is no discussion in the complaint about any

10   differences in price trends between HDMI and other technologies.  Analogix's claim that HDMI

11   is the current "standard" is a purely conclusory allegation without any meaning under the antitrust

12   laws or even a sufficient allegation to support this vague point.

13       The fact is that Analogix cannot, consistent with its Federal Rule of Civil Procedure

14   Rule 11 obligations, allege that HDMI is not reasonably interchangeable with other technologies.

15   As the In-Stat report Analogix relies on throughout its complaint clearly shows, there are

16   numerous other products and technologies that compete against HDMI products.  Analogix,

17   however, has limited the relevant product market to a "standard," not to a grouping of products

18   that compete against each other.  This type of "market definition" gerrymandering for the purpose

19   of creating an allegedly high market share for Silicon Image is precisely what the cases

20   addressing market definition reject.

21       For each segment in the electronics industry, In-Stat identifies several competing

22   technologies.  For personal computers ("PC"), In-Stat identifies DVI, DisplayPort, HDMI, the

23   1394 standard, and standard integrated graphics.  *See* Exhibit A at pp. 14-18.  In PC peripherals,

24   In-Stat identifies such technologies as DVI, DisplayPort, HDMI, and analog inputs such as Video

25   Graphics Array (VGA), composite, bayonet Neill-Concelman (BNC), S-Video, Red-Green-Blue

26

_____

27   [5]  The complaint also fails to address cross-elasticity of supply, which, as noted above, is part of
     the antitrust jurisprudence in the Ninth Circuit.  There are no allegations addressing whether
     producers of different products could switch to producing HDMI Solutions or Discrete HDMI

28   Solutions in the event of a price increase in one, or both, of the alleged relevant markets.

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   (RGB), and component. *See id.* at pp. 19-22. For consumer electronics, In-Stat identifies DVI,

2   HDMI, Universal Serial Bus ("USB"), Ultra-Wideband ("UWB"), Wireless High-Definition, and

3   the 1394 standard. *See id.* at pp. 13-14, 22-30. For communication devices, In-Stat identifies

4   USB, UWB, and HDMI technologies. *See id.* at p. 31. Despite these numerous other relevant

5   substitute technologies, of the roughly 100 paragraphs in Analogix's complaint, it devotes one

6   single paragraph to discuss any technologies other than HDMI. (Compl. ¶ 25(f)) The caselaw is

7   clear that this is grounds for dismissal. As mentioned above, "even on a motion to dismiss, an

8   antitrust claim will be dismissed '[i]f a complaint fails to allege facts regarding substitute

9   products, *to distinguish among apparently comparable products*, or to allege other pertinent facts

10  relating to cross-elasticity of demand.'" *E-Z Dock,* 2006 U.S. Dist. LEXIS 28305, at *7

11  (emphasis added) (quoting *Commercial Data Servers,* 166 F. Supp. 2d at 896).

12      Defendants respectfully request that the Court dismiss Analogix's Sherman Act Section 1

13  and Section 2 claims for failure to define the relevant product market with regards to reasonable

14  interchangeability or cross-elasticity of demand. Further, given the number of other technologies

15  that clearly compete with HDMI, Analogix cannot amend its complaint by merely adding

16  allegations that reference reasonable interchangeability or cross-elasticity of demand to maintain

17  its impermissibly narrow product markets. *Twombly,* 127 S. Ct. at 1965 ("a formulaic recitation

18  of the elements of a cause of action will not do"). Accordingly, Defendants respectfully requests

19  that Analogix's Sherman Act Section 1 and Section 2 claims be dismissed with prejudice.

20      **E.     Analogix's Cartwright Act Claim Should Be Dismissed.**

21      "California's Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, is patterned after

22  the Sherman Act. California courts look to federal case law interpreting the Sherman Act for

23  guidance in interpreting the Cartwright Act." *Big Bear Lodging,* 182 F.3d at 1101 n.2 (citing

24  *Chicago Title Ins. Co. v. Great Western Fin. Corp.*, 69 Cal. 2d 305, 315 (1968)); *Morrison v.*

25  *Viacom, Inc.*, 66 Cal. App. 4th 534, 541 n.2 (1998). As the "purpose of the Cartwright Act is to

26  protect and foster competition by preventing combinations and conspiracies which unreasonably

27  restrain trade," its interpretation parallels Section 1 of the Sherman Act. *Morrison v. Viacom,*

28  *Inc.*, 52 Cal. App. 4th 1514, 1524 (1997).

1    The Cartwright Act requires a conspiracy between independent economic actors and, as

2    such, Analogix fails to state a claim under California's Cartwright Act. Simply put, the alleged

3    conspiracy among Silicon Image and its wholly-owned subsidiaries, HDMI Licensing and

4    Simplay Labs does not qualify under controlling caselaw holding that an entity and its agents

5    cannot form an antitrust conspiracy. Indeed, by its terms, the Cartwright Act applies only to a

6    "combination of capital, skill or acts by two or more persons." Cal. Bus. & Prof. Code § 16720;

7    *see also Alfred M. Lewis, Inc. v. Warehousemen,* 163 Cal. App. 2d 771 (1958).

8    The requirement of a "combination" under the Cartwright Act cannot be satisfied by

9    alleging a conspiracy between a corporation and its wholly-owned subsidiaries. *See Copperweld*

10    *Corp.,* 467 U.S. at 769 ("officers or employees of the same firm do not provide the plurality of

11    actors imperative for [an antitrust] conspiracy"). California courts apply *Copperweld* and other

12    federal decisions interpreting Sherman Act Section 1 claims for guidance in determining whether

13    a conspiracy has been properly alleged under the Cartwright Act. *See Yamaha Int'l Corp. v. ABC*

14    *Int'l Traders, Inc.,* 1989 U.S. Dist. LEXIS 16585, at *44 (C.D. Cal. August 11, 1989)

15    ("*Copperweld* is persuasive authority in interpreting the Cartwright Act..."); *Newport*

16    *Components, Inc. v. NEC Home Electronics, Inc.,* 671 F. Supp. 1525, 1550 (C.D. Cal. 1985)

17    (applying *Copperweld* by analogy to the Cartwright Act). Indeed, "[i]n the absence of proof of an

18    agreement or conspiracy, there cannot be a violation of [the Cartwright Act]." *Roth v. Rhodes,* 25

19    Cal. App. 4th 530, 545 (1994) (affirming dismissal of Cartwright Act claim where plaintiff failed

20    to plead an actionable conspiracy); *Dimidowich v. Bell & Howell,* 803 F.2d 1473, 1478 (9th Cir.

21    1986) (same); *G.H.I.I. v. MTS, Inc.,* 147 Cal. App. 3d 256, 266-69 (1983) (same).

22    As with Analogix's Sherman Act Section 1 claim, its failure to allege market power in the

23    relevant market for HDMI Solutions is fatal to its Cartwright Act claim. The caselaw applying

24    the Cartwright Act have analyze plaintiffs' claims under the rule of reason unless they fall into a

25    discrete group of claims that are inherently suspect (*e.g., per se* violations such as price-fixing,

26    market allocations, group boycotts). *See Dimidowich,* 803 F.2d at 1480 ("Both Federal and

27    California courts ... rather have applied the rule of reason where the economic impact of the

28    challenged practice is not obvious"); *Marin County Bd. of Realtors, Inc. v. Palsson,* 16 Cal. 3d

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1    920, 930 (1976) (applying federal Sherman Act case law when analyzing whether alleged conduct

2    is *per se* unlawful under the Cartwright Act because of its "pernicious effect on competition");

3    *Corwin v. Los Angeles Newspaper Service Bureau, Inc.*, 4 Cal. 3d 842, 852-53 (1971) (Cartwright

4    Act claims shall be analyzed under the rule of reason unless such claims "are conclusively

5    presumed to be unreasonable and therefore illegal..."). As discussed in reference to Analogix's

6    Sherman Act Section 1 claim above, it is clear that Analogix's Cartwright Act claim falls under

7    the purview of the rule of reason.

8           Finally, Analogix's Cartwright Act claims should be dismissed because of Analogix's

9    failure to properly define the relevant product market. As noted above, the Cartwright Act

10   follows the federal caselaw and the rule of reason in claims that are not inherently suspect. *See*

11   *Dimidowich*, 803 F.2d at 1480. Analogix is required to properly define the relevant product

12   market to maintain its Cartwright Act claim. As discussed in detail above, Analogix has failed to

13   do so. Therefore, Analogix's Cartwright Act claim should be dismissed.

14   **F.    Analogix's Section 17200 Claim Should Be Dismissed.**

15          Analogix cannot sustain its claim for violation of California's Unfair Competition Law.

16   Section 17200 prohibits "any unlawful, unfair, or fraudulent business practice." Cal. Bus. & Prof.

17   Code § 17200. Analogix's Section 17200 claim is premised on the successful outcome of its

18   Sherman Act and Cartwright Act claims. For the reasons set forth above, each of these claims

19   should be dismissed. Accordingly, Analogix's Section 17200 claim should be dismissed as well.

20   *See Violante v. Communities Southwest Dev. & Constr. Co.*, 41 Cal. Rptr. 3d 673, 678 (2006)

21   (dismissing Section 17200 claim where there was no underlying wrongful conduct).

22          A business practice is considered "unlawful" only if it is specifically proscribed by some

23   other law. *Cel-Tech Communications, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

24   If Analogix's Sherman Act and Cartwright Act claims are dismissed, there is no unlawful

25   conduct. Furthermore, "unfair" under Section 17200 means "conduct that threatens an incipient

26   violation of an antitrust law, or violates the policy or spirit of one of those laws . . . ." *Cel-Tech*,

27   20 Cal. at 187. If Analogix's Sherman Act and Cartwright Act claims are dismissed, there can be

28   no unfair conduct because there would be no threatened antitrust violation. *See Chavez v.*

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO

1   *Whirlpool Corp.*, 93 Cal. App. 4th 363, 375 (2001) ("If the same conduct is alleged to be both an

2   antitrust violation and an 'unfair' business act or practice for the same reason, … the

3   determination that the conduct is not an unreasonable restraint of trade necessarily implies that

4   the conduct is not 'unfair' toward consumers."). Finally "fraud" is not alleged under the facts set

5   forth in Analogix's complaint.

6       Analogix's Section 17200 claim is derivative of the other claims in its complaint. Thus,

7   dismissal of Analogix's Sherman Act and Cartwright Act claims, requires that its Section 17200

8   claim be dismissed.

9   **III.    CONCLUSION.**

10      Analogix has failed to state a claim for the following counts in its complaint:  (1) Sherman

11  Act Section 1; (2) Sherman Act Section 2; (3) California Cartwright Act Section 16720; and

12  (4) California's Unfair Competition Law Section 17200.  Accordingly, Defendants respectfully

13  request that the Court dismiss Analogix's complaint with prejudice.

14                              Respectfully submitted,

15

16

17

18

19

20

21

22

23

24

25

26

27

28

McDermott Will & Emery LLP
Attorneys at Law
Palo Alto

1  Dated: August 18, 2008                    McDERMOTT WILL & EMERY LLP

2

3                                            By:    /s/ WILLIAM DIAZ

4                                                TERRENCE P. McMAHON (CA Bar No.71910)
                                                 tmcmahon@mwe.com
5                                                DANIEL E. ALBERTI (CA Bar No. 68620)
                                                 dalberti@mwe.com
6                                                DAVID T. ALEXANDER (CA Bar No. 49996)
                                                 dtalexander@mwe.com
7                                                BIJAL V. VAKIL (CA Bar No. 192878)
                                                 bvakil@mwe.com
8                                                McDERMOTT WILL & EMERY LLP
                                                 3150 Porter Drive
9                                                Palo Alto, CA  94304-1212
                                                 Telephone:      650.813.5000
10                                               Facsimile: 650.813.5100
                                                 RAYMOND A. JACOBSEN, JR. (Pro Hac Vice)
11                                               rayjacobsen@mwe.com
                                                 McDERMOTT WILL & EMERY LLP
12                                               600 13th Street, N.W.
                                                 Washington, DC  20005-3096
13                                               Telephone:      202.756.8000
                                                 Facsimile: 202.756.8087
14
                                                 WILLIAM DIAZ (CA Bar No. 232297)
15                                               wdiaz@mwe.com
                                                 McDERMOTT WILL & EMERY LLP
16                                               18191 Von Karman Avenue, Suite 500
                                                 Irvine, CA  92612-7108
17                                               Telephone:      949.851.0633
                                                 Facsimile: 949.851.9348
18
                                                 Attorneys for Defendants SILICON IMAGE,
19                                               INC., HDMI LICENSING, LLC and SIMPLAY
                                                 LABS, LLC
20

21  ORC 444870-1.060717.0033

22

23

24

25

26

27

28

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
PALO ALTO